

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00034-CR

ALLEN WAYNE CAPERTON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 13th District Court
Navarro County, Texas
Trial Court No. 31248

## MEMORANDUM  OPINION

Allen Wayne Caperton pleaded guilty to criminal mischief causing pecuniary loss of $100,000 or more but less than $200,000.  The court rejected his motion for community supervision and sentenced him to fifteen years' imprisonment.  Caperton contends in two issues that the court abused its discretion by denying his motion for community supervision because: 1) the court relied "heavily on substantial pecuniary loss that was not shown to have been caused by Appellant"; and (2) he had no prior felony convictions and only two prior misdemeanor convictions.  We will affirm.

## Background

Caperton pleaded guilty based on his involvement with two others in tampering with the power lines providing electrical service to thirty oil well pumps owned by Bill Stoner. They pulled down several utility poles and removed "about 6 miles of wire." One of Stoner's employees Curtis McNeese went to Stoner's property on the date in question and saw Caperton and two others moving around near two pickups and a car. Caperton was loading wire into the bed of his pickup. When Caperton and the others saw McNeese driving in their direction, they "loaded up and started towards [him]." McNeese called Stoner and told him to call the police, then he followed the three vehicles. When they reached a highway intersection, they went in different directions. McNeese followed Caperton until they reached the city of Rice, where Caperton was stopped by police officers. Stoner provided documentary evidence that it would cost $149,500 to replace the stolen wire and restore electrical service to his pumps and that he had lost $49,000 in revenue because of the cessation of production.

During the punishment phase, the State offered evidence that Caperton's misdemeanor community supervision for evading detention was revoked in 1998 and he was sentenced to 120 days in jail and that he was convicted of displaying an altered or fictitious vehicle registration in 2006 and sentenced to 10 days in jail and a $100 fine.

The court announced the reasons for rejecting Caperton's motion for community supervision and sentencing him to fifteen years' imprisonment.

> You know, I've had an opportunity to look at the pre-sentence investigation and the report of it in this case. And although the defendant has no felony criminal history, he has one of the worst misdemeanor

criminal histories I've ever seen. It certainly demonstrates to me that he's not an appropriate candidate for probation. Now having said that, I've also had an opportunity to review the evidence in this case. The amount of damage done in connection with this offense was truly shocking. We're talking about probable damages to the victim in this case may be closer to $200,000 than [$100,000]. The defendant has demonstrated no ability to make restitution irrespective of what his sister says.

## The Court's Discretion

We begin by observing that the court's determination to grant or deny community supervision "is wholly discretionary and nonreviewable." *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999). Nevertheless, we shall address the issues presented by Caperton to further explain why no abuse of discretion occurred.

## Pecuniary Loss

Caperton contends in his first issue that the court improperly relied "heavily on substantial pecuniary loss that was not shown to have been caused by Appellant."

According to section 7.02(a)(2) of the Penal Code, a person is criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PEN. CODE ANN. § 7.02(a)(2) (Vernon 2003). From Caperton's guilty plea and McNeese's testimony, the court was well within its discretion to conclude that Caperton and the two unidentified persons were acting in concert and that Caperton was criminally responsible for any pecuniary loss occasioned by their collective acts.

The State observes that section 28.06 specifically defines the amount of pecuniary loss for purposes of damaged (as opposed to destroyed) property under the criminal

mischief statute as "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." *Id.* § 28.06(b) (Vernon 2003). It appears that lost revenues are not included within this definition, which tends to support Caperton's assertion that the trial court used an improper measure for determining the extent of the financial loss suffered by Stoner.

However, the measure of pecuniary loss provided by section 28.06 governs only the degree of the offense. *See id.* § 28.03(b) (Vernon Supp. 2008) (listing various categories of misdemeanor and felony offenses depending primarily on amount of pecuniary loss). Even if Stoner's lost revenues are not considered part of his pecuniary loss under section 28.06, those lost revenues are part of the circumstances of the offense, which a court or jury is expressly authorized to consider in assessing punishment. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008); *see also Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). Thus, the court did not abuse its discretion by considering Stoner's lost revenues in assessing Caperton's punishment. Accordingly, we overrule Caperton's first issue.

### Prior Criminal History

Caperton contends in his second issue that the court abused its discretion by denying his motion for community supervision because he had no prior felony convictions and only two prior misdemeanor convictions.

Despite Caperton's claim, it appears that the court took several things into consideration in deciding to reject his request for community supervision. In particular, the court reviewed: (1) Caperton's criminal record (including the fact that he was

unable to successfully complete a term of misdemeanor community supervision); (2) the magnitude of the financial loss suffered by Stoner; and (3) Caperton's lack of resources to provide restitution. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). The court also relied on a presentence investigation report, which has not been included in the appellate record. *See id.* art. 37.07, § 3(d) (Vernon Supp. 2008). Thus, it is possible that the PSI report details additional aspects of Caperton's criminal history or other circumstances not apparent from the trial record. Accordingly, we cannot say that the court abused its discretion by denying Caperton's request for community supervision even though the trial record contains evidence of only two prior misdemeanor convictions.

For these reasons, we overrule Caperton's second issue and affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
Affirmed
Opinion delivered and filed October 8, 2008
Do not publish
[CR25]