

# NUMBER 13-20-00286-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

STEPHEN RAYMOND BRACKENS, Appellant,

v.

THE STATE OF TEXAS, Appellee.

### On appeal from the 278th District Court of of Walker County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Stephen Raymond Brackens appeals his conviction of burglary of a

habitation, a second-degree felony.[1] *See* TEX. PENAL CODE ANN. § 30.02(c)(2). Brackens

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

was sentenced to ten years' incarceration in the Texas Department of Criminal Justice, Institutional Division. By two issues, Brackens argues (1) the trial court abused its discretion in denying his request for community supervision, and (2) the trial court imposed an unconstitutionally disproportionate sentence. *See* U.S. CONST. amend VIII. We affirm.

## I. BACKGROUND

On January 28, 2020, Brackens entered into an open plea, pleading guilty to the offense as indicted. Prior to accepting his plea of guilty, the trial court admonished Brackens as to the punishment range, and Brackens affirmatively indicated he understood. The trial court thereafter ordered a pre-sentencing investigation (P.S.I.) report.

On May 20, 2020, the court reconvened for a sentencing hearing. The State requested that the trial court take judicial notice of the P.S.I. report, which indicated that Brackens had been arrested nineteen times for offenses including arson, assault, theft, and burglary. The State then called Robert and Patricia Nichols, the complainants in the underlying burglary of a habitation offense, to testify.

Robert, a pastor at Cook Springs Baptist Church in Huntsville, Texas, testified that he, Patricia, and their grandson had returned to the parsonage,[2] on the evening of May 5, 2019, to find Brackens inside the garage. "[Brackens] was rummaging around in the glove compartment of my Toyota pickup in the garage," testified Robert. Brackens fled when he saw them. Robert tried to pursue Brackens on foot and instructed his wife and grandson to remain in the vehicle and call the sheriff's department. Law enforcement

---

[2] The parsonage is located adjacent to the church.

arrived several minutes later and ultimately apprehended Brackens. Robert identified Brackens on the scene as the same individual he had seen in the garage. Robert provided the following description of the interior of the residence:

> When we went into the house[,] it was pretty much in shambles. The large picture window, double picture window in the front that had Venetian blinds behind it, had been kicked in. There was glass scattered all over the kitchen. There was garbage strewn everywhere. Every bed had been slept in or wrestled in or tousled in. The house stunk. One of the front bedrooms had a quart of green paint poured out on the blanket on top of the bed[] and was just sitting there. It was filthy. Oil had been poured out all over the stove, . . . and there was a propane lighter sitting there beside that oil on top of that stove.

Robert testified that the church has since spent over $11,000 on increased security measures. Patricia testified that the experience stripped her of her "sense of security" and left her and her grandson "terrified."

Brackens, who is originally from Colorado, testified that he had a long history with mental illness and initially moved to Texas "[t]o stay with [his] mom and have a better life."[3] Brackens testified he had intended to head back to Colorado when he was arrested for this offense. Brackens said he was "walking down the highway" when it started raining, so he sought shelter at the residence adjacent to the church. Brackens testified that he was outside the home for at least one day before he broke in, and he stayed in the home for "maybe two days." Brackens maintained he was in the garage "looking for some cleaning supplies" to "clean up the house before anyone came home" when the Nicholses arrived. Brackens denied trashing the house and maintained oil had been poured over the stove "by accident."

---

[3] Brackens's mother, Deana Brackens, testified that Brackens had lived with her in the past, and she would be willing to take him in if he was placed on probation. According to Deana, Brackens has a history of mental illness and successfully completed probation in Colorado. She did not specify the offense or length of probation.

Brackens requested that he be placed on deferred adjudication or alternatively, community supervision. The State argued that a sentence of eight years was appropriate. The trial court sentenced Brackens to ten years' incarceration. This appeal followed.

## II.    COMMUNITY SUPERVISION

In his first issue, Brackens contends the trial court abused its discretion in not suspending Brackens's ten-year sentence and placing him on community supervision or deferred adjudication.

The granting of community supervision is a privilege, not a right. *Dansby v. State*, 448 S.W.3d 441, 447 (Tex. Crim. App. 2014). As such, the trial court's decision whether to grant community supervision is "wholly discretionary and nonreviewable." *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999); *see also McElyea v. State*, No. 10-19-00296-CR, 2020 WL 4217967, at *1 (Tex. App.—Waco July 20, 2020, no pet.) (mem. op., not designated for publication) (overruling appellant's claim that the trial court abused its discretion in denying his request for community supervision as "nonreviewable"); *Love v. State*, No. 02-18-00043-CR, 2019 WL 2223219, at *1 n.3 (Tex. App.—Fort Worth May 23, 2019, no pet.) (mem. op., not designated for publication) (concluding the same). Accordingly, we cannot say that the trial court abused its discretion by denying Brackens's request for community supervision. *See Speth*, 6 S.W.3d at 533; *see also McElyea*, 2020 WL 4217967, at *1.

We additionally note, despite Brackens's claim that the trial court's decision lacked any reason, it appears that the trial court took several things into consideration in deciding to reject Brackens's request for community supervision, namely: (1) the P.S.I. report,

which based on the State's comments at the hearing,[4] indicated that Brackens had a lengthy criminal arrest record; (2) the Nicholses' testimony regarding the egregiousness of the offense; and (3) Deana and Brackens's testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (providing that a judge may consider evidence deemed relevant to sentencing, "including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried . . . ."); *see generally Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (noting that "the sentencer's discretion to impose any punishment within the prescribed range" is "essentially unfettered" and stating that "[s]ubject only to a very limited, exceedingly rare, and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal" (internal quotations and citations omitted)); *see also Caperton v. State*, No. 10-08-00034-CR, 2008 WL 4512852, at *2 (Tex. App.—Waco Oct. 8, 2008, no pet.) (mem. op., not designated for publication) (concluding that the trial court did not abuse its discretion in denying the appellant's request for community supervision although the trial record only contained evidence of two prior misdemeanors and the P.S.I. report was not available in the appellate record). We overrule Brackens's first issue.

### III.    EXCESSIVE PUNISHMENT

By his second issue, Brackens contends that his ten-year sentence is excessive and in violation of the Eighth Amendment. *See* U.S. CONST. amend. VIII.

---

[4] A copy of the P.S.I. report was not included in the appellate record.

5

An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *see also Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010) (acknowledging that the Eighth Amendment is applicable to the states by virtue of the Fourteenth Amendment (citing *Robinson v. California*, 370 U.S. 660, 666–67 (1962))). A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) (providing that as long as the sentence is assessed within the legislatively determined range, it will unlikely be disturbed on appeal).

However, in order to preserve for appellate review a complaint that a sentence is grossly disproportionate or constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Navarro v. State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019, no pet.) (holding that to preserve a disproportionate-sentencing complaint, the defendant must make a timely, specific objection in trial court or raise the issue in a motion

for new trial); *Toledo v. State*, 519 S.W.3d 273, 284 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (same); *Trevino*, 174 S.W.3d at 928 (same).

At no time prior to this appeal did Brackens argue that the sentence imposed was disproportionate to the offense charged or in violation of his constitutional rights. *See* U.S. CONST. amend. VIII. Accordingly, we hold that Brackens failed to preserve his complaint for review. *See* TEX. R. APP. P. 33.1(a); *Smith*, 721 S.W.2d at 855. And even if Brackens had preserved this complaint, it lacks merit because Brackens's ten-year sentence falls within the statutory range for his offense. *See* TEX. PENAL CODE ANN. § 12.33 (providing that the punishment range for a second-degree felony is "imprisonment . . . for any term not more than 20 years or less than 2 years"); *Trevino*, 174 S.W.3d at 927–28 ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection."); *see also Jones v. State*, No. 10-18-00037-CR, 2019 WL 962499, at *2 (Tex. App.—Waco Feb. 27, 2019, no pet.) (mem. op., not designated for publication) (concluding the same). We overrule Brackens's second point of error.

### IV.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of April, 2021.

7