In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00421-CR
_____

JOHN ROBERT MCCOMB IV, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR32141

**MEMORANDUM OPINION**

Appellant John Robert McComb IV appeals from the revocation of his deferred adjudication community supervision and imposition of sentence. In issue one, McComb complains that the trial court erred by denying his motion to suppress evidence obtained solely based on a condition of his community supervision that authorized a search without a warrant or probable cause in violation of his right

1

against an unreasonable search and seizure. In issue two, McComb contends he received ineffective assistance of counsel. We affirm the trial court's judgment.

## BACKGROUND

The State indicted McComb for possession of a controlled substance with the intent to deliver. McComb pleaded guilty, and the trial court found the evidence sufficient to find McComb guilty but deferred further proceedings and placed McComb on community supervision for six years. The State subsequently filed a motion to revoke McComb's unadjudicated community supervision, alleging that McComb violated the conditions of his community supervision by (1) committing the offense of possession of a controlled substance with the intent to deliver during his period of community supervision, and (2) failing to work eighty hours in the community supervision program. After hearing evidence, the trial court found that McComb had violated two conditions of his community supervision, found McComb guilty, and assessed punishment at fifteen years of confinement. McComb appealed.

## ANALYSIS

In issue one McComb argues that the trial court erred by admitting evidence obtained during a warrantless search of his hotel room. McComb contends that his agreement to waive his right to be free of unreasonable searches and seizures as a

condition of his community supervision violates fundamental constitutional guarantees and public policy. According to McComb, the trial court should have granted his motion to suppress because the search was only based on a condition of his community supervision, and the confidential informant's unsubstantiated tip that McComb was allegedly selling narcotics out of his hotel room was insufficient to provide reasonable suspicion. The State argues that McComb accepted the terms of his community supervision as part of his plea bargain agreement, and because McComb failed to object to the contractual terms of his community supervision when he was placed on deferred adjudication community supervision, he waived any rights encroached on by the terms of the agreement.

The record shows that as part of his plea bargain agreement, McComb agreed to the following condition:

> The defendant shall submit his or her person, place of residence, and vehicle to search and seizure at any time with or without a search warrant, whenever requested to do so by any law enforcement officer or Liberty/Chambers County Supervision and Corrections Department, for the purpose of monitoring whether the defendant is complying with the terms and conditions of community supervision[.]

During the revocation hearing, defense counsel argued that the evidence seized during the search of the hotel room should be suppressed because McComb did not waive his Fourth Amendment rights when he agreed to the conditions of his

3

community supervision. The State argued that McComb agreed to the condition as part of his plea agreement.

The trial court heard evidence regarding the circumstance that led to the search of McComb's hotel room. An officer with the San Jacinto County Sheriff's Office testified that while working as an undercover narcotics investigator, a confidential informant told him that McComb was selling methamphetamines out of the Best Western Hotel in Liberty County and was making trips to Houston in a blue Corvette to pick up drugs. The undercover narcotics officer conveyed the information to Paul Young with the Liberty County Sheriff's Office and then went to the hotel where he located the blue Corvette. He explained that the hotel clerk confirmed that McComb was staying at the hotel. According to the officer, he went to the hotel based on the informant's tip, and at that point, he did not think he had enough information to get a warrant to search McComb's room.

Paul Young testified that he received information from Sergeant Flynt with the San Jacinto County Sheriff's Office that McComb was distributing methamphetamines out of the Best Western, and that McComb was making trips in and out of the hotel with a pickup and a Corvette. Young explained that he was familiar with McComb and knew that he was on probation, and according to Young, the standard terms and conditions of probation in Liberty County included a waiver

4

to any search of a probationer's person, vehicles, and residence. Young testified that he located both of McComb's vehicles at the hotel, and McComb complied with his request to search his hotel room by using his key card to open the door. Young explained that he found narcotics in the hotel room and arrested McComb for possession of a controlled substance with the intent to deliver. Young explained that he did not have probable cause to search McComb's hotel room, and the search was based solely on the condition of McComb's probation and McComb's agreement to waive his right to the search.

The trial court found that in his plea agreement, McComb agreed to the search of his person, property, and residence, and the court followed the plea agreement by placing McComb on probation and including that agreement in the terms and conditions of his community supervision. The trial court found that McComb is bound by those terms and conditions, which are sufficiently set out, and that McComb knew he was waiving his constitutional right against unreasonable search and seizure.

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that rely on credibility determinations if they

5

are supported by the record. *Id*.; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, we review *de novo* questions of law and mixed questions of law and fact that do not rely on credibility determinations. *Kerwick*, 393 S.W.3d at 273. At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

An award of community supervision is a contractual privilege, and the conditions are terms of the contract entered between the trial court and the defendant. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). When a condition is not objected to, it is affirmatively accepted as a term of the contract. *Id.* A defendant, who enters into the contractual relationship without objection, affirmatively waives any rights encroached upon by the terms of the contract. *Id.* "[A] defendant who is fairly notified of the conditions of community supervision at a hearing at which he has an opportunity to object forfeits any later complaint about those conditions, as

6

long as those conditions do not involve a systemic right or prohibition." *Dansby v. State*, 448 S.W.3d 441, 447 (Tex. Crim. App. 2014).

A condition of community supervision that generally authorizes a search and seizure at any time requested by any law enforcement officer, without further restriction, is unreasonable and invalid. *Tamez v. State*, 534 S.W.2d 686, 690, 692 (Tex. Crim. App. 1976). However, if a condition of community supervision authorizing a search is reasonably restricted to promote the purposes of community supervision, it does not violate the Fourth Amendment's or the Texas Constitution's prohibition against unreasonable searches and seizures. *Cochran v. State*, 563 S.W.3d 374, 379 (Tex. App.—Texarkana 2018, no pet.); *see also* U.S. Const. amend. IV; Tex. Const. art. I, § 9. In support of his contention that the condition authorizing a warrantless search is too broad and improperly allows the State to violate his Fourth Amendment right, he cites *Tamez. See Tamez*, 534 S.W.2d at 690–93.

We hold that *Tamez* is distinguishable, because the probationary condition in that case allowed a search of Tamez's person, residence, and vehicle, at any time by any law enforcement officer, for any purpose, and without any individualized suspicion. *See id.* at 692. Unlike *Tamez*, the condition here subjects McComb's person, vehicle, and residence to a warrantless search "for the purpose of monitoring whether the defendant is complying with the terms and conditions of community

7

supervision[.]" McComb had been placed on deferred adjudication community supervision for possession of a controlled substance with the intent to deliver, and another condition of McComb's community supervision required him to refrain from possessing drugs. Because McComb's condition is reasonably restricted to promote the purposes of community supervision, we hold that it does not violate the Fourth Amendment or the Texas Constitution. *See Cochran*, 563 S.W.3d at 379.

While McComb argues that reasonable suspicion was required to support the search even considering the term of his community supervision, we are not persuaded that his argument is supported by *United States v. Knights*, 534 U.S. 112 (2001). In *Knights*, the Court did not decide that reasonable suspicion was required even if a defendant waived his Fourth Amendment rights, because the Court concluded that, irrespective of the condition of probation, reasonable suspicion supported the search. *Knights*, 534 U.S. at 114, 118, 121–22. The State argues that the Supreme Court decided the issue of whether reasonable suspicion was required when a search is solely predicated on a condition of probation in *Samson v. California*, 547 U.S. 843, 849–50 (2006).

In *Samson*, the Court concluded that a parole officer's suspicionless search of a parolee did not violate the Fourth Amendment because the parolee did not have an expectation of privacy that society would recognize as legitimate. *Samson*, 547 U.S.

8

at 846, 852. The *Samson* Court noted that in deciding *Knights*, it observed that probationers do not enjoy the absolute liberty to which every citizen is entitled, and that in concluding Knights' expectation of privacy was significantly diminished, it considered the fact that Knights' probation order clearly set out the probation search condition and Knights was clearly informed of the condition. *Id.* at 848–49. The *Samson* Court recognized the State's interest in reducing recidivism and promoting reintegration among probationers and parolees warrants privacy intrusions that would otherwise not be tolerated and concluded that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. *Id.* at 853, 857.

We hold that the terms and conditions of McComb's community supervision alone supported the search because the trial court found that: (1) McComb agreed to the condition of his community supervision authorizing the search of his person, place of residence, and vehicle; (2) the court followed the plea agreement by including that agreement in the terms and conditions of his community supervision and by placing McComb on probation; (3) McComb is bound by those terms and conditions, which are sufficiently set out; and (4) McComb knew he was waiving his constitutional right against unreasonable search and seizure. *See id.* at 857; *Cochran*, 563 S.W.3d at 382. Because the valid condition of McComb's community

9

supervision authorized the warrantless search of his hotel room, we conclude that the trial court did not err by denying McComb's motion to suppress. *See Kerwick*, 393 S.W.3d at 273. We overrule issue one.

In issue two, McComb contends he received ineffective assistance of counsel at the hearing on the motion to revoke his unadjudicated community supervision. Specifically, McComb argues that trial counsel failed to produce evidence to substantiate counsel's argument that McComb was medically unfit to participate in community service. McComb contends that his counsel failed to subpoena records regarding his cancer diagnosis and hernia, which would have provided the trial court with sufficient evidence to find that McComb was unable to complete his community service hours. According to McComb, his counsel failed to (1) raise an argument based on the doctrine of impossibility, (2) present evidence of his medical condition and request a waiver of his community service hours, (3) complain that the State's allegation concerning his failure to work eighty hours of community service violated due process by failing to fully and completely set forth in more detail how he violated the condition that McComb maintains had been orally modified, and (4) call any witnesses or develop evidence necessary to advance his defensive theory that his physical condition prevented him from completing his community service.

To prevail on a claim of ineffective assistance of counsel, McComb must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Texas courts have held that *Strickland* requires an appellant to show a reasonable probability that, but for his counsel's errors, the outcome of his trial would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id*. McComb must prove that there was no plausible professional reason for specific acts or omissions of his counsel. *Id*. at 836. In addition, "[a]ny allegation of ineffectiveness must be firmly grounded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Because the reasonableness of counsel's decisions and strategy often involves facts that do

not appear in the appellate record, the record on direct appeal is generally insufficient to support a claim of ineffective assistance. *See id*. at 813–14.

Nothing in the appellate record supports McComb's claims. McComb did not file a motion for new trial to develop a record supporting his ineffective assistance claim. Therefore, this Court has no explanation as to the reasons for counsel's decisions at the revocation hearing. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (explaining that an appellate court generally will not find counsel ineffective when there is no record to show that counsel had the opportunity to explain himself). Nothing in the appellate record demonstrates that any available witnesses would have offered testimony benefitting McComb, nor does the record demonstrate that counsel was ill-prepared. McComb has not demonstrated that counsel was ineffective. *See Thompson*, 9 S.W.3d at 813. Accordingly, we overrule issue two. Having overruled each of McComb's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on October 2, 2019
Opinion Delivered October 23, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.